Wheeler, J.
It is objected to the sufficiency of tlie indictment that it does not desorille the gaming table on which it is averred the defendant bet by its proper name, nor as a gaming table tlie name of which is unknown.
The Matute, article 5G7 of the Digest, declares what shall be a sufficient description of (lie offense in the indictment; but it does not prescribe a form which must invariably be pursued. Its intention obviously was to furnish the pleader willi a description which in point of certainty should be sufficient, but not to proscribe a form which lie must follow. It furnishes one but not the-only test of sufficiency of tlie indictment. It may be regarded as indicative of the degree of certainty which the. legislature deemed sufficient to ap-piiso the defendant of tlie nature of tlie offense with which he stands charged, and to put. him upon his trial.
The present indictment does not describe the offense by the name of the-gaming table at which tlie defendant tier, but describes it by tlie averment that Hie defendant bet money, and by the name, of I,tie person who kept the table. "Noil her of these averments was necessary had tlie indictment contained tlie name of tlie gamingtable; yet the description by these averments — particularly the name of tlie keeper of tlie table — was certainly a description of equal if not greater certainty as matter of identity, and quite as well calculated to apprise the defendant of tlie particular betting with which he was charged as simply the. name of the table or tlie averment that its name was unknown. Though'not precisely tlie same, yet there is quite as much certainty of description in the indictment as that which the statute declares shall be sufficient. Tested, (lion, by the degree of certainty prescribed by tlie statute,.the indictment is sufficient. Is it not so, when tried by the general rules respecting the-requisite degree, of certainty applicable to indictments for other and graver offenses? T>y reference to the books of established precedents it will be seen that- the present contains quite as circumstantial a description of the offense as is given in approved forms of indictments for assault, and battery, or even larceny, and oilier crimes which might be, named, in respect, to which there is quite-a® much reason to require great certainty of description as in respect to the offense here charged. It would so,em that the graver the offense, the more severe the penally denounced by the law, the greater would be its solicitude to-apprise the accused of the nature of the accusation, and enable him to prepare-for his defense. We can perceive no reason why a greater degree of certainty should be required in an indictment for this offense, than has always been held' sufficient in those for tlie graver offenses mentioned. Whether, therefore, we determine the sufficiency of the indictment by analogy to the form which *154 the legislature has declared shall be a sufficient description of the offense, or by .a comparison with the forms of indictments for other offenses which have been always held to contain the requisite degree of certainty, it will be found sufficient.'
Another principle has been invoked by the Attorney General in support of this indictment, and we think witli reason: that is, that in an indictment for an offense created by statute it is, in general, sufficient to describe the offense in the language of the statute creating it. The statute creating this offense, (art. 505,) after naming certain inhibited banks and tables, adds, “orany other “gaming table or bank of the like kind, or of any other description, under any “other name or denomination whatever, or without any name therefor.” What follows the words “or any other gaming table or bank” is mere tautology, and serves no other purpose than to evince.the extreme solicitude of the Legislature to inhibit ah gaming tables and banks, whether with or without a name, manifesting the intention of treating the name as wholly immaterial and unnecessary to constitute the offense. Á few names, supposed to be well known, appear to have been given as descriptive of tlie species of gaming intended to be inhibited by this section of the statute; but it was evidently intended to prohibit not merely the gaming tables known by those names, but all gaming tables and banks, whether with or without a name. And the offense created by this section of the statute consists in tlie keeping or exhibiting of any gaming table or bank. Applying the rule to which we have adverted, respecting the description, in the indictment of offenses created by statute, it would be sufficient in an indictment against tlie keeper to aver, with tlie requisite certainty of time and place, that lie did keep a gaming table or bank, (as the case may be,) in the words of the statute, without other words of description. And in an indictment against the betters that they did bet at a gaming table kept by one A. B., the name of the person charged as keeper of the gaming table or bank. This description of the offense would be sufficient upon the general principles of tlie law respecting the degree of certainty requisite in indictments for offenses created by statute. Aud it is the description contained in the indictment in this case. We reject the words “at rondo ” employed in the description of the offense as unnecessary, and conclude that the indictment is sufficient independently of the provision contained in the 71st section of tlie act. To hold it otherwise would be, it seems to us, to require a greater degree of certainty than is requisite on general principles, or than would be consistent with the legislative will as expressed in tlie statute.
The charge of the court was, we think, substantially correct. We do not understand that it is, literally, the table or structure, whatever that may be, on which the game is played which gives it tlie character and designation of a gaming table, but it is rather from-the character of the playing or the game which is played that it receives its specific designation. If it be a billiard table which is used, as from the evidence it appears it generally is, the name and description of tlie game played is material only that it may appear that it is not the game which is protected by the license, or that it is of tlie description or species of gaming prohibited by the statute. When thus employed and for such purposes tlie billiard table is perverted from its legitimate design and use. It is ■converted into a gaming table, for which it was not designed and licensed, and for the time ceases to be a licensed table. It may then be described by the name of tlie game played upon it. Or if it be designated by its proper name it will only be necessary to aver and prove the name of the game for the playing of which it is used, in order that it may appear that it is not the game for which the table was licensed. This appears to have been the view of the law taken by the judge in his charge to the jury, and it seems to us the cori-ect view.
The objection to the judgment that rondo is not one of the gaming tables or banks named in the 69th section of the statute, and is not therefore included in the prohibition of the 70th section, is well answered by the Attorney *155 General by reference to the succeeding section. It is the well-settled rale in the construction of statutes that, in order to arrive at tlie legislative intention, the several provisions and parts of a law must ho taken, considered, and construed together. If a doubt existed as to the intention of tlie legislature in tlie two preceding sections, that doubt is removed by considering them with tlie section in question, which, in prescribing wliat shall be a sufficient indictment for the offense intended to be inhibited, declares that it shall be sufficient to describe tlie table or bank by the proper name, if known, or as a table or bank the name of which is unknown, thus placing it beyond a doubt that it was the intention to prohibit not only the gaming tables and banks named, but others not named, and even those without any known name or designation. (Dig., art. 567, also 565, 566.) Thus what was the intention of the legislature is manifest by considering the several provisions of the law in their natural connection as reflecting their meaning one upon tlie other, aiid what is the proper construction of .the statute is placed beyond a question by the application of a rule of construction so universally received and admitted as to have become a legal maxim. It ■has often been remarked by this and other courts that laws enacted for the punishment of mere misdemeanors have never been subjected to the.same strictuess of construction as more highly penal statutes. In construing the latter great strictness has justly boon observed, and the courts have sometimes, infavorem vitos, resorted to what may seem to be, even strained construction in cases of doubtful guilt to avert the terrible penalty denounced by the law. But, in the construction of statutes not more highly penal than the one in question, the rule has been to adopt that construction which will effectuate the clearly-expressed will of the legislature. It is conceived the indictment in this case must be held sufficient and the conviction legal and proper. The judgment is therefore affirmed.
Judgment affirmed.
Note 69. — Barker v. The State, 12 T., 273.